UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY WILLMAN,<br><br>            Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>            Defendant. | Civil No. 12cv01595 IEG(RBB)<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 29], DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 30], AND REMANDING FOR FURTHER PROCEEDINGS** |

    On June 27, 2012, Plaintiff Michael Anthony Willman filed a Complaint against Defendant Michael J. Astrue, the then-Commissioner of Social Security [ECF No. 1]. Plaintiff challenges the denial of his claim for disability insurance benefits. (Compl. 2-3, ECF No. 1.) Defendant filed an Answer on September 13, 2012, along with the Administrative Record [ECF Nos. 9, 11]. On April 18, 2013, Willman's Motion for Summary Judgment was filed [ECF No. 29].

    Since the initiation of this lawsuit, Carolyn W. Colvin has replaced Astrue as the Acting Commissioner of Social Security. Colvin is therefore substituted for her predecessor pursuant to

Federal Rule of Civil Procedure 25(d). Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment on May 23, 2013, with a Memorandum of Points and Authorities [ECF No. 30]. Willman filed his Reply, with a Memorandum of Points and Authorities, on May 30, 2013 [ECF No. 31]. On June 17, 2013, Colvin filed a "Reply to Plaintiff's Opposition [ECF No. 33]." The Motion for Summary Judgment and Cross-Motion for Summary Judgment [ECF Nos. 29, 30] were referred to the undersigned on June 12, 2013 [ECF No. 32].

This matter is suitable for decision without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the reasons set forth below, the Court recommends that the district court **GRANT in part and DENY in part** Willman's Motion for Summary Judgment [ECF No. 29], **DENY** Defendant's Cross-Motion for Summary Judgment [ECF No. 30], and remand the case for further proceedings.

### I. PROCEDURAL HISTORY

On February 20, 2009, Plaintiff filed an application for supplemental security income benefits alleging a disability onset of September 12, 2007. (Admin. R. Attach. #2, 23, ECF No. 11.)[1] The Social Security Administration denied his claim on June 10, 2009, and again upon reconsideration on September 10, 2009. (Id.) On November 10, 2009, Willman filed a written request for a hearing. (Id.)

A hearing was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on October 21, 2010. (Id. at 34.) Willman, his

---

[1] The administrative record appears on the Court's docket and is filed as multiple attachments. The Court, however, cites the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's ECF system.

former attorney Daniel Keenan, a vocational expert, and a medical expert were present. (Id.) Judge Schloss heard testimony from Plaintiff and the vocational and medical experts. (Id. at 35.)

Dr. Landau, the medical expert, testified that Willman had been diagnosed with ischemic heart disease, obstructive sleep apnea, and morbid obesity. (Id. at 36-38.) He noted that the claimant also likely had diabetes. (Id. at 38.) To treat his sleep apnea, Willman was placed on a CPAP machine, but he did not comply with the treatment. (Id. at 39.) Based on Plaintiff's medical condition, the expert opined that Willman could walk for two hours in an eight-hour work day and lift or carry ten pounds frequently and twenty pounds occasionally. (Id.) Dr. Landau also determined that Plaintiff could balance, climb stairs but not ladders, and occasionally stoop and bend. (Id. at 40.) He noted that Willman's work environment should be air-conditioned. (Id.)

Plaintiff later took the stand and stated that he had not worked since September of 2007. (Id. at 45.) Although he subsequently attempted to find work, he was unsuccessful. (Id. at 45-46.) Willman maintained that he was able lift up to ten pounds, sit for up to two hours at a time, and stand for twenty minutes. (Id. at 47.) He testified that he was a smoker and suffered from chest pain, pain in his legs, fatigue, and difficulty breathing. (Id. at 49-50, 51-52.) According to Willman, he attempted to comply with the recommended CPAP treatment, but the CPAP machine did not function properly. (Id. at 50.)

The vocational expert also testified. (Id. at 41.) He maintained that Plaintiff's previous work experience as a truck driver was classified as semi-skilled medium work. (Id. at 42.)

He also opined that Willman's past relevant work as an assistant manager at a convenience store was semi-skilled light work. (Id.)

The ALJ asked the vocational expert whether a fifty-two-year-old man with a high school education and past work experience as a truck driver and assistant manager at a convenience store could perform Willman's past relevant work if he (1) could stand and walk for two hours in an eight-hour day and sit for up to eight hours with normal breaks; (2) was limited to lifting twenty pounds occasionally and ten pounds frequently; (3) could occasionally stoop and bend; (4) could not balance, work at heights, or use ladders, ropes, or scaffolds; and (5) had to work in an air-conditioned environment. (Id. at 43.) The expert said no. (Id.) The vocational expert did say, however, that such a person could perform unskilled work as a small parts assembly person, production assembler, or surveillance system monitor. (Id.) He stated that, respectively, 213,000, 211,000, and 128,000 of those jobs existed in the national economy. (Id.)

## II. THE ALJ'S DECISION

The ALJ issued a written decision on December 10, 2010, finding that Plaintiff was impaired with a "cardiac condition, morbid obesity, tobacco addiction, type II diabetes mellitus, and obstructive sleep apnea." (Id. at 20, 25.) The claimant, however, did not have an impairment or combination of impairments that met or equaled a listed impairment that would make him eligible for benefits. (Id. at 26.) During the alleged disability period, Plaintiff was initially classified as a "younger individual" but later progressed to the category of "closely approaching advanced age." (Id. at 28.) Willman's testimony was deemed "credible only

to the extent that [it was] consistent with the residual functional capacity assessed herein." (Id.)

ALJ Schloss concluded that Willman could "perform less than the full range of light work" and could lift or carry twenty pounds occasionally and ten pounds frequently. (Id. at 26.) He also opined that Willman could stand and walk two hours in an eight-hour work day and sit without limitation if given normal breaks. (Id.) According to the ALJ, Plaintiff could occasionally bend, stoop, and climb stairs, but should not balance, climb ladders, or work at heights. (Id.) Willman was not, Judge Schloss decided, able to perform his past relevant work as a truck driver or convenience store assistant manager. (Id. at 28.) Relying on the testimony of the vocational expert, the ALJ held that Willman could work as a small parts assembler, production assembler, and surveillance system monitor. (Id. at 29.) He stated that these jobs existed in "significant numbers in the national economy." (Id.)

### III. APPLICABLE LEGAL STANDARDS

#### A. **Generally**

To qualify for disability benefits under the Social Security Act, an applicant must show two things: (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled." Id.

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the Social Security Administration to seek judicial review of the Commissioner's final agency decision. <u>Id.</u> §§ 405(g); 42 U.S.C.A. 1383(c)(3) (West 2012). The district court may affirm, modify, or reverse the Commissioner's decision. <u>Id.</u> § 405(g). The court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998)). The district court may also remand the matter to the Social Security Administration for further proceedings. 42 U.S.C.A. § 405(g).

**B.    Remand for Further Proceedings**

A district court may remand a Social Security disability matter to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g). <u>Hoa Hong Van v. Barnhart</u>, 483 F.3d 600, 605 (9th Cir. 2007). That provision states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). "A sentence-four remand is essentially a determination that the Commissioner erred in denying benefits." <u>Havrylovich v. Astrue</u>, No. 09-1113-HA, 2011 U.S. Dist. LEXIS 7187, at *19 (D. Or. Jan. 25, 2011) (citing <u>Hoa Hong Van</u>, 483 F.3d at 605). If a case is remanded for a rehearing, the Commissioner may modify or affirm the original findings of fact or the decision. <u>See</u> 42 U.S.C.A. § 405(g).

A remand to the Commissioner for further proceedings or to award benefits is within the court's discretion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). "'If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" <u>Id.</u> (quoting <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981)). "[T]he proper course, except in rare circumstances, is to remand to [an administrative] agency for additional investigation or explanation." <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (internal quotation marks and citation omitted) (discussing remand to Board of Immigration Appeals).

## IV. DISCUSSION

In his Motion for Summary Judgment, Plaintiff contends that the ALJ should have limited Willman to sedentary work because the base of light-work jobs available to Plaintiff was significantly eroded. (Mot. Summ. J. 5-7, ECF No. 29.) The claimant also insists that the ALJ failed to provide adequate reasons for rejecting his testimony. (<u>Id.</u> at 9.) In her Cross-Motion for Summary Judgment, Colvin argues that the administrative law judge properly relied on the vocational expert's opinion in finding that Plaintiff could perform light work. (Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A. 3, ECF No. 30.) She also maintains that the ALJ properly rejected Willman's testimony. (<u>Id.</u> at 5.)

"Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(e)(2) (2012). Generally, conflicts in the

evidence should be resolved by the Commissioner, not the courts. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Laffoon v. Califano, 558 F.2d 253, 254 (5th Cir. 1977). The ALJ is the final arbiter of ambiguities in the medical evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008). The Commissioner's decision must be upheld when the evidence would support more than one rational interpretation. Havrylovich, 2011 U.S. Dist. LEXIS 7187, at *4 (citing Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)).

Plaintiff requests that this matter be remanded for the payment of benefits or, in the alternative, remanded to the Commissioner "for the proper consideration of the evidence." (Mot. Summ. J. 14, ECF No. 29.) The Ninth Circuit has articulated the standard district courts must apply when deciding whether to remand a matter for further proceedings:

> Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted); see Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) (applying the standard outlined in Benecke). "A claimant is not entitled to benefits under the

statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss, 635 F.3d at 1138.

**A.    Whether the ALJ Properly Considered the Erosion of the Light Occupational Base for an Individual Closely Approaching Advanced Age**

First, Plaintiff argues that the base of light-work jobs available to him was significantly eroded; thus, ALJ Schloss should have determined that Willman was capable of only sedentary work. (Mot. Summ. J. 5-6, ECF No. 29.) Specifically, the claimant asserts that the administrative law judge determined that Willman could stand or walk for two hours in a work day. (Id. at 6.) The ALJ also concluded that Plaintiff could perform "less than the full range of light work." (Id.) Willman submits that the light occupational base was significantly eroded due to these limitations. (Id. at 6-7.)

The claimant argues that when an occupational base is "significant[ly]" eroded, the Social Security Administration's Program Operations Manual System ("POMS") directs an ALJ to use a lower exertional rule in Appendix Two of the Medical-Vocational Guidelines (the "grids") to make a disability determination. (Id. at 6 (citing SSA, POMS § DI 2501.001.B.72).) Thus, Plaintiff asserts that ALJ Schloss should have applied the sedentary work rule (Rule 201.14), as opposed to the rules governing light work (Rules 202.21 and 202.14). (Id. at 7.) Willman alleges that he is a "person closely approaching advanced age," but does not expand on the argument. (See id. at 5.)

Defendant insists that the ALJ properly relied on the vocational expert in determining that Plaintiff could perform light

work.  (See Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A. 3, ECF No. 30.)  She urges that an ALJ is not obligated to apply POMS.  (Id.)  Moreover, POMS only suggests that an ALJ use the sedentary guidelines if there is "'considerable reduction in the available occupations at a particular exertional level.'"  (Id. (quoting SSA, POMS § DI 25001.001.B.71).)

Rather, Colvin claims that the ALJ did what was required of him -- consulting with a vocational expert -- when a claimant's limitations cause him to fall between two sets of guidelines.  (Id. at 4 (citing SSR 83-12(2)(c), 1983 WL 31253, at *3 (1983)).)  Relying on the vocational expert's opinion, ALJ Schloss determined that Willman could perform some, but not all light-work occupations.  (Id.)  On this basis, the Commissioner contends that the ALJ did not err.  (Id. at 5.)

In his Reply, Plaintiff argues that Social Security Ruling 83-12(2)(c) does not state that when a claimant falls between two sets of guidelines the ALJ "must" consult with a vocational expert.  (Pl.'s Reply Attach. #1 Mem. P. & A. 3, ECF No. 31.)  Rather, the ruling indicates that it is "advisable" to do so.  (Id.)  Willman contends that the doctrine of deference demands that POMS be applied.  (Id. at 4.)  In her Reply, the Commissioner asserts that Plaintiff failed to provide authority supporting his contention that the administrative law judge erred by using the grids as a framework for his decision.  (Def.'s Reply 2, ECF No. 33.)

The Ninth Circuit has held that "POMS may be 'entitled to respect' . . . to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially enforceable duties on either this court or the ALJ."

Carillo-Yeras v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011) (internal citations omitted) (quoting Lockwood v. Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010)); see also Hermes v. Sec'y Health & Human Servs, 926 F.2d 789, 791 n.1 (9th Cir. 1991) (holding that POMS does not have the force or effect of law); Staggs v. Astrue, No. 1:11cv804 DLB, 2012 WL 1158865, at *9 (E.D. Cal. Apr. 6, 2012) (same).

Even if the ALJ was required to abide by POMS, it "does not mandate the ALJ to use a lower exertional rule level. Instead, it merely suggests using a lower exertional rule as a framework if there is a 'considerable reduction in the available occupations at a particular exertional level.'" Williams v. Colvin, No. CV 12-3974 FFM, 2013 WL 2147856, at *3 (C.D. Cal. May 16, 2013) (quoting SSA, POMS § DI 25001.001.B.71); see also Durden v. Astrue, CV 11-1211-SP, 2012 WL 682880, at *3 (C.D. Cal. Mar. 2, 2012) (same); White v. Astrue, No. CV 10-8048-SP, 2011 WL 5570237, at *6 (C.D. Cal. Nov. 16, 2011) (same). Accordingly, ALJ Schloss was not required to follow the suggestions outlined in POMS.

When a claimant's limitations cause him to fall in between sedentary and light work, an ALJ must consult with a vocational expert. See Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 580 (9th Cir. 1988); see also Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006); Moore v. Apfel, 216 F.3d 864, 870-71 (9th Cir. 2000). Here, the vocational expert testified that a person with Plaintiff's background and limitations could work as a small parts assembly person (14,000 in California and 213,000 in the national economy), production assembler (13,400 in California and 211,000 in the national economy), or surveillance system

monitor (10,100 in California and 128,000 in the national economy). (Admin. R. Attach. #2, 43, ECF No. 11.) The ALJ subsequently relied on this testimony and determined that Willman was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 29.) Accordingly, ALJ Schloss did not err. See Williams, 2013 WL 2147856, at *4 (finding that ALJ properly consulted with a vocational expert when a claimant could perform a limited range of light work); Durden, 2012 WL 682880, at *3 (same); White, 2011 WL 5570237, at *6 (same).

**B.   Whether the ALJ Properly Determined that Plaintiff was Not Credible**

Next, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. (Mot. Summ. J. 9, ECF No. 29.) Willman continues, "If [he] has a combination of impairments that cause pain and fatigue that subjectively preclude him from full-time work activity and no contrary medical evidence exists in the record to contradict that testimony, then [he] meets the statutory test [for disability status]." (Id. at 11-12.) Plaintiff contends that his testimony regarding his inability to work is consistent with the medical evidence as a whole. (Id. at 12.) Yet, the ALJ did not provide any specific reasons supporting his finding that Willman was not credible. (Id.) If the Defendant provides a post hoc rationale for the ALJ's ruling, Plaintiff asserts, this would prove that the credibility determination was inadequate. (Id.)

Colvin maintains that the administrative law judge properly explained his credibility finding. (Cross-Mot. Summ. J. & Opp'n

Attach. #1 Mem. P. & A. 5, ECF No. 30.)  In light of the ALJ's specific findings and a review of the record, Defendant submits that the ALJ's findings were "clear and specific enough."  (Id. (citations omitted).)

The Commissioner alleges that the ALJ provided a number of reasons for rejecting Plaintiff's testimony.  (Id. at 6.) Specifically, the ALJ properly relied on Willman's failure to follow his doctors' advice to quit smoking and start using the CPAP machine correctly.  (Id. (citing Admin. R. Attach. #2, 26-27, ECF No. 11; id. Attach. #7, 194, 233, 235, 249; id. Attach. #8, 459, 461, 466).)  Judge Schloss also correctly relied on the fact that Plaintiff's cardiac condition was responsive to treatment and that doctors opined that Willman could work.  (Id. (citing Admin. R. Attach. #2, 27-28, 39-40, ECF No. 11; id. Attach. #7, 237, 240-46, 253-54).)  Additionally, Colvin argues that the ALJ properly relied on the objective medical evidence, which was consistent with his determination regarding Plaintiff's residual functional capacity ("RFC") and inconsistent with a finding of disability.  (Id. (citing Admin. R. Attach. #2, 25-28, ECF No. 11; id. Attach. #8, 235-36).)  Further, Defendant alleges that Willman's statements were deemed credible to the extent they were consistent with the ALJ's RFC assessment.  (Id. (citing Admin. R. Attach. #2, 28, ECF No. 11).)  The Commissioner states that the ALJ gave Plaintiff the benefit of the doubt and found that Plaintiff could only perform a modest range of light work."  (Id.)

In his Reply, Willman insists that the Defendant provides a post hoc analysis not done by Judge Schloss.  (Pl.'s Reply Attach. #1 Mem. P. & A. 5, ECF No. 31.)  Plaintiff responds to the alleged

reasons for rejecting his credibility by contending that he did not comply with medical advice to stop smoking because it "triggered a separate drug addiction and alcohol analysis, which the ALJ did not perform." (Id. at 6.) Moreover, Plaintiff maintains that the fact that he responded to treatment does not mean that he is able to work. (Id. at 7 (citations omitted).) Willman submits that he was not required to provide objective medical evidence proving the severity of his pain or fatigue. (Id.) Finally, he asserts that none of his physicians stated that he could work. (Id.) Willman alleges that none of these reasons satisfy the clear and convincing standard. (Id. at 8.) In her Reply, Colvin reiterates that the administrative law judge made adequate findings to support his credibility determination. (Def.'s Reply 2, ECF No. 33.)

"In order for the ALJ to find [claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Thomas, 278 F.3d at 958). In evaluating the credibility of a plaintiff's testimony regarding subjective pain, the adjudicator must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Vasquez, 572 F.3d at 591 (quoting

Lingenfelter, 504 F.3d at 1036). Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms if he gives "'specific, clear and convincing reasons'" for doing so. Id. (quoting Lingenfelter, 504 F.3d at 1036); Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

Here, Judge Schloss initially determined that Willman's impairments "could reasonably be expected to cause the alleged symptoms . . . ." (Admin. R. Attach. #2, 28, ECF No. 11.) No one challenges this conclusion. The first prong of the ALJ's inquiry regarding Willman's credibility is therefore satisfied. See Vasquez, 572 F.3d at 591. Next, the Court determines whether Judge Schloss provided clear reasons for the adverse credibility finding that are supported by the evidence in the record.

The Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). To support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record which demonstrate that [the plaintiff] is in less pain than she claims.'" Vasquez, 572 F.3d at 592 (quoting Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918. A reviewing court should not be forced to speculate as to the grounds for an administrative law judge's rejection of a plaintiff's allegations of disabling pain. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v.

Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); see also Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the ALJ must build an accurate and logical connection between the evidence and the decision).

In general, questions of credibility are for the ALJ to resolve. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Courts should not "second-guess" an ALJ's credibility determinations. Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984). If the evidence is conflicting and could be rationally interpreted more than one way, the court must uphold the ALJ's decision. Id. at 579.

Social Security Ruling 96-7p provides the relevant standard:

> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 SSR LEXIS 4, at *2-4 (July 2, 1996).

The Ninth Circuit has articulated the grounds on which an ALJ may properly discredit a claimant's testimony:

> In weighing a claimant's credibility, the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.

Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted). Where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008); see also Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001).

Here, ALJ Schloss held that Plaintiff was, at least to a certain extent, not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible only to the extent that they are consistent with the residual functional capacity assessed herein.

(Admin. R. Attach. #2, 28, ECF No. 11.)

In assessing Willman's credibility, the ALJ did not explicitly rely on Plaintiff's failure to follow his doctors' advice, his responsiveness to treatment, or on the fact that the objective medical evidence was inconsistent with a finding of disability, as argued by Colvin. (Compare id., with Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A. 5-6, ECF No. 30.) The grounds suggested by the Commissioner were not specifically invoked by the

ALJ when he made his credibility determination; thus, the Court will not speculate as to whether they were used as a basis to reject Willman's credibility. See Bunnell, 947 F.2d at 346.

As discussed, Judge Schloss determined that Willman had the RFC to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for two hours in an eight-hour day, and sit without limitation. (Admin. R. Attach. #2, 26, ECF No. 11.) In contrast, Plaintiff testified that he could lift up to ten pounds, sit for up to two hours at a time, and stand for twenty minutes. (See id. at 47.) Thus, the latter statements were implicitly rejected as not credible. Yet, Judge Schloss did not give any reasons, let alone specific and legitimate reasons, for his credibility determination. (See id. at 25-29.)

There may be evidence in the record that the ALJ can rely on as "specific, clear and convincing reasons" for rejecting the claimant's testimony. Indeed, the Defendant discusses multiple bases that could have been relied upon to discount Plaintiff's credibility. (See Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A. 6, ECF No. 30.) The Commissioner made a similar argument in Vasquez v. Colvin, No. ED CV 12-1302-E, 2013 U.S. Dist. LEXIS 86554, at *7-8 (C.D. Cal. June 19, 2013), which the court rejected.

> The ALJ's decision does not specifically identify any of these considerations as the reason or reasons for the ALJ's credibility determination. The ALJ's decision mentions some of these considerations, but does not expressly base the credibility determination on any of them. Consequently, the Court cannot affirm the credibility determination on the basis of any of these considerations.

Id. Accordingly, the court remanded the matter for further administrative review. Id. at *8.

The ALJ is in a better position to evaluate credibility than this Court. See Vasquez, 572 F.3d at 591; see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("We are wary of speculating about the basis of the ALJ's conclusion . . . ."). The Commissioner should address Willman's credibility before making a decision as to disability. See Swims Under v. Astrue, 473 F. App'x 552, 553 (9th Cir. 2012) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for his adverse credibility determination). A remand for further proceedings rather than an award of benefits is appropriate.

### V.  CONCLUSION AND RECOMMENDATION

"The decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing Paqter v. Massanari, 250 F.3d 1255, 1258 (9th Cir. 2001)). If the AlJ's decision is not supported by substantial evidence, remand or reversal is appropriate. Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir. 1984).

For the reasons stated above, Plaintiff's Motion for Summary Judgment [ECF No. 29] should be **GRANTED in part and DENIED in part**, and Defendant's Cross-Motion for Summary Judgment [ECF No. 30] should be **DENIED**. The Court recommends a limited remand. On remand to the Social Security Administration, the administrative law judge should explain his reasons for determining that Willman was not credible and the effect of this determination of his claim for benefits.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 30, 2013. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before September 9, 2013. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 15, 2013

RUBEN B. BROOKS
United States Magistrate Judge

cc: Judge Gonzalez
All Parties of Record